In re Joe Bob EASTERLY & Helen Easterly, Debtors.

William L. LANCASTER, III Trustee in Bankruptcy, Plaintiff,

v.

Joe Bob EASTERLY Commercial Credit Plan, Inc., Mark Easterly, Defendants.

Bankruptcy No. 3–80–00901.
Adv. No. 3–81–0074.

United States Bankruptcy Court, E. D. Tennessee.

April 24, 1981.

Ferdinand Powell, Jr., Johnson City, Tenn., for plaintiff.

Jim W. Stambaugh, Morristown, Tenn., for Commercial Credit Plan, Inc.

Jimmy Gray Cutshaw, and William E. Bowman, Greeneville, Tenn., for Mark Easterly.

Charles Gordon, Powell, Tenn., for Joe Bob Easterly.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The controversy in this adversary proceeding involves the ownership of ten guns (four Brownings, three Winchesters, one Stevens, one Ruger, one Remington) valued at some $2,000 to $2,500. Asserting ownership or rights in the guns are the debtors, the trustee, a son of the debtors, and Commercial Credit. The various contentions of the debtor in documents and pleadings signed or filed by him, frequently contradictory, make resolution of the issues more difficult than would be normally encountered.

In the petition filed by the debtor on July 7, 1980, the guns are not listed in Schedule B–2, Personal Property. However, in Schedule B–4, Property Claimed as Exempt, the following statement appears:

9 Guns located at debtors residence, value $2000.00 claimed as exempt under T.C.A. 26–202. "Equity in guns is claimed by William Mark Easterly [the debtor's son] as his sole property."

In Schedule A–3, Creditors Claiming Security, Commercial Credit Plan is listed in the amount of $4769.00, with security shown as various items of household furnishings of the value of $500.00. None of

the guns are listed as security, although "1 gun case" is shown.

On August 1, 1980, the debtor filed "Amendment to Petition", inter alia, to change the market value of the household goods held by Commercial Credit as security for its debt from $500.00 to $900.00. The debtor also proposed to amend Schedule B–4, Property Claimed as Exempt, as follows:

| | |
|---|---|
| Type of property: | Guns |
| Location: | At debtor's residence |
| Statute: | TCA 26–202 |
| Value: | $1500.00. |

Also, on the same date the debtor filed adversary proceeding No. 3–80–0397, naming Commercial Credit as defendant. In this proceeding the debtor asserted that on May 25, 1978, he had obtained a loan from Commercial Credit in the amount of $3,792.70 and had pledged as security "household goods, including appliances and sports equipment." Paragraph 4 of the complaint states as follows:

"The debtors' interest in the property referred to in the preceding paragraph does not exceed $900.00, if certain guns in the home of the debtors are not included. The defendant's (Commercial Credit's) disclosure statement also specifies 6 Browning shotguns, which the debtors allege are the property of their son, William Mark Easterly, who is 19 years of age, and the value of the guns is approximately $1500.00."

The debtor sought to avoid Commercial Credit's security interest pursuant to 11 U.S.C. § 522(f)(2).[1] Trial was held October 3, 1980, at which time the court granted the debtor's prayer for relief as to the household goods and furnishings but denied relief as to the Browning shotguns. Paragraph 2 of the judgment decrees that Commercial Credit's lien "against six guns in the home of the debtor at the time of granting the lien is a valid lien as to the debtors."[2]

On September 8, 1980, the debtor filed "Second Amendment to Petition" adding some five secured and unsecured creditors, with claims totaling $54,485.24, none of which relate to the issue before the court.

On November 13, 1980, the debtor filed "Third Amendment to Petition" adding inter alia three additional unsecured creditors with claims in the amount of $10,000.00. Paragraph 2 of the amendment states as follows:

"2. To add under Schedule B–2—Personal property

Gun: Sweet 16 Browning, 20 ga. Browning, 12 ga. Browning, pump 22 rifle, 308 rifle, 410 ga. shotgun, 12 ga. Browning, lever action 22, 220 Swift, 243 rifle. Market value, $2000.00.

Note: The debtor's son, William Mark Easterly, claims these guns as gifts from his parents. These guns are added to the debtor's property since it may be that these guns are the property of the debtors."

Further, the debtors proposed to exempt under T.C.A. 26–202,

"Guns:   at debtors' residence
        12 ga. Browning
        lever action 22
        220 Swift
        243 rifle
with indicated value of $800.00."

---

1. "(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(2) a nonpossessory, nonpurchase-money security interest in any—
(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
(C) professionally prescribed health aids for the debtor or a dependent of the debtor." 11 U.S.C. § 522(f)(2).

2. The last phrase was added by the court as the trustee had not been made a party to the proceeding, and it was unknown at that time whether he was asserting any rights in the guns.

The Third Amendment was apparently the result of a letter from the attorney for the trustee to the attorney for the debtors, dated November 11, 1980, advising that the trustee had taken into his possession 6 of the 10 guns involved in this controversy, and that the trustee intended to institute an adversary proceeding to sell those guns as assets of the estate, and to seek a determination of the rights of the debtors' son to the remaining four guns which at that time were in the possession of the son as he had refused to surrender them to the trustee.

On January 26, 1981, the trustee instituted the present adversary proceeding, naming the debtor, the son, and Commercial Credit as defendants, seeking to determine the ownership of the ten guns. (Subsequent to the letter of November 11, 1980, the son, on November 20, 1980, turned the remaining guns over to the trustee). Trial was held on April 7, 1981.[3]

## II

█ The son, Mark Easterly, age 19, testified that nine of the guns belong to him (the exception is a Winchester 22 rifle); that seven of the guns were Christmas or birthday presents to him over the past eight years from his parents; one was a present from an older brother, Doug Easterly; and one was a present from an individual identified as Connie Sexton. Mark's testimony is supported by the testimony of the debtor, Joe Bob Easterly; his brother, Doug Easterly; his grandfather, W. W. White; and to a lesser extent by a hunting companion and a seller of two of the guns. Another witness, Rev. Harry Thomas, also testified that at the request of the father, he constructed a gun cabinet some 6 years ago and was told that the cabinet was a gift for his son, Mark. Rev. Thomas further testified that Mark had told him many years ago that he intended to build a collection of "Brownings".

There is no evidence in the record disputing the claim of Mark to the guns. The trustee correctly conceded that the proof is clear that Mark's rights to the nine guns are superior to the rights of the trustee. It also appears that Mark's rights to the four Brownings are superior to the rights of Commercial Credit. The guns belonged to Mark at the time his father granted a security interest in the guns to Commercial Credit. There is no proof that the father had authority to do so. The act of one who pledges property without authority of the true owner cannot deprive the owner of his property, absent a showing of express or implied authority to enter into the transaction. See 3 Am.Jur.2d Agency § 129.

█ This does not mean, however, that the debtor can escape his liability to Commercial Credit for pledging property that did not belong to him. 11 U.S.C. § 523(a)(2) states that a discharge does not discharge an individual debtor from any debt for obtaining money or property by false pretenses, a false representation, or actual fraud.

In May 1978, the debtor applied to Commercial Credit for a loan of some $3,800.00 offering his household furnishings as security therefor. Terry Vanover, Commercial's loan officer, went to the debtor's home to appraise the furniture. He told the debtor the furniture did not have sufficient value to permit a loan for that amount. The debtor then offered as security six Browning shotguns and one gun case. According to Mr. Vanover, the debtor told him the value of the shotguns alone was more than enough to secure the loan. Mr. Vanover observed the guns in a gun cabinet and thereafter approved the loan. He did not, however, take the serial numbers from the guns. A security agreement and financing statement were prepared itemizing the household furnishings together with "1 gun case and 6 Browning shotguns." The documents were signed by the debtor and his wife. Sometime in May 1979 the loan was increased and a new security agreement and financing statement executed. Those

---

3. Trial was initially noticed for March 3, 1981, but at that time neither the son nor his attorney was present, nor did Commercial have certain

documents necessary to support its security interest in the Browning shotguns.

documents also list the gun case and the six Browning shotguns. The present balance owing Commercial Credit is $4,641.72.

The debtor testified that he told Mr. Vanover that the guns belonged to Mark and that he did not know that the guns had been included in the security agreement until after the bankruptcy case was filed. He testified further that he signed the security agreement without reading it. The debtor's testimony is rejected. He signed not one document reflecting ownership of the guns but four documents—two security agreements and two financing statements. He is not an inexperienced borrower. He also has made contradictory statements in documents filed in this court concerning the guns.

I find and conclude that the debtor, when he negotiated the loan with Commercial Credit, made a false representation to that creditor when he asserted ownership of the Browning shotguns and pledged those guns as security for the loan. The household furniture obviously was not of sufficient value to justify a loan of $3,800.00. In his petition in bankruptcy the debtor valued the furniture at $500.00, later amending that figure to $900.00. Mr. Vanover's testimony that he requested additional collateral and that the debtor then offered the guns in order to obtain the loan is both logical and believable.

The record is not clear as to the discrepancy between 6 Browning shotguns shown in the security agreements and financing statements and 4 Browning shotguns turned over to the trustee. There is no evidence, however, that the debtor disposed of any guns after granting a security interest therein to Commercial Credit.

The 4 Browning shotguns in the possession of the trustee will be appraised. Judgment will be entered against the debtor in favor of Commercial Credit in that amount. Further, the judgment will provide that the debt is nondischargeable. 11 U.S.C. § 523(a)(2). After appraisal, the trustee will be directed to turn the Browning shotguns over to the son, Mark Easterly, together with the remaining 5 guns claimed by him.

As between the debtor and the trustee, the trustee's rights in the remaining gun, a Winchester 22 calibre, are superior. If another party asserts rights in that gun, the matter will be set for hearing; otherwise, the trustee will be directed to sell the gun for the benefit of the estate.

This memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.